306 Ga. 266
FINAL COPY

S19A0231.  JACKSON v. THE STATE.

BENHAM, Justice.

Torico Jackson appeals his convictions for malice murder and related offenses in connection with the stabbing death of John Ray. On appeal, Jackson claims that the trial court erred by failing to instruct the jury on the applicable statute of limitation for the relevant non-murder offenses, by admitting certain police reports, and by denying his motion for a mistrial; Jackson also asserts that trial counsel rendered constitutionally ineffective assistance in a number of ways.  Although we find no reversible error with respect to Jackson's convictions, we determine that he has been improperly sentenced in part, and, as such, we vacate his sentence in relevant part and remand for resentencing.[1]

---

[1] The murder occurred sometime between May 16 and May 17, 2004.  In August 2013, a Fulton County grand jury returned an eight-count indictment charging Jackson with malice murder, three counts of felony murder, aggravated assault, burglary, armed robbery, and possession of a knife during

Viewed in a light most favorable to the verdicts, the evidence adduced at trial established as follows. On the day he was last seen alive, Ray, a paralegal, spoke with a friend by telephone and indicated that he was at home in the company of an unnamed man, later identified as Jackson. Ray explained to his friend that, though he had been spending time with Jackson recently, a background check had revealed, among other things, that Jackson had a criminal history. Later that day, Ray spent time socializing with friends and was scheduled to help a soon-to-be roommate service her vehicle; Ray, however, did not arrive to help his future roommate

---

the commission of a felony. Following a trial conducted August 29–September 11, 2013, a jury found Jackson guilty of all counts. Days later, the trial court sentenced Jackson to consecutive terms of life imprisonment without the possibility of parole for malice murder and armed robbery, a consecutive twenty-year term of imprisonment for burglary, and a consecutive five-year term of imprisonment for possession of a knife during the commission of a felony. As discussed below, however, Jackson's life-without-parole sentence for malice murder is improper. All other counts were either vacated by operation of law or merged for sentencing purposes.

Jackson filed a motion for new trial in September 2013, which he subsequently amended in April and May 2018. Following a hearing, the trial court denied Jackson's motion for new trial as amended. A timely notice of appeal was filed in June 2018; this appeal was docketed to the term of court beginning in December 2018 and thereafter submitted for consideration on the briefs.

and was never heard from again.

In the early morning hours of the following day, an officer with the Atlanta Police Department observed a white Pontiac Grand Am — later identified as belonging to Ray — run a stop sign. The officer attempted to initiate a traffic stop, but the vehicle fled and subsequently crashed. When law enforcement discovered the wrecked vehicle, it was unoccupied; the car was covered in blood and the back seat was filled with property later identified as belonging to Ray, including electronics and a lock box. The car was impounded and swabs of the blood were sent for DNA testing.

Days later, Ray was discovered dead in his residence, which had been secured and alarmed; he had been stabbed to death, and his hands were bound behind him with telephone cord. The crime scene smelled of bleach, and the washing machine held recently-laundered clothing, including a red, oversized Rocawear shirt. Investigators discovered blood in the bathroom where the assailant had apparently bathed. A search of Ray's computer revealed that he had conducted self-initiated background checks on a number of

individuals, including Jackson, but there were no immediate leads in the case. The DNA from the blood in Ray's car did not immediately match a known individual, and, as a consequence, the case went cold; the DNA profile was entered into the Combined DNA Index System ("CODIS") on the chance that the DNA could be matched in the future to a known sample. Two years later, in 2006, CODIS preliminarily matched Jackson's DNA to the blood discovered in the wrecked Pontiac.

In 2010, a detective revisited Ray's unsolved murder, reviewing evidence in the case and working to confirm the preliminary DNA match. A review of Ray's telephone records revealed that, around the time of the murder, phone calls were made between Ray's telephone and individuals who were acquainted with Jackson but not Ray. The cold-case detective also uncovered a photograph of Jackson amongst Ray's possessions; it was timestamped just two days before the murder. The investigation also led the detective to gather photographs of Jackson, and, in a photograph taken just two months before the murder, Jackson is depicted wearing a red,

oversized Rocawear shirt, like the one found in Ray's washing machine. The cold-case detective learned that Jackson had told his girlfriend that a scar on his nose came from an accident in which he had flipped a car. Fulton County booking photographs of Jackson reveal that he must have sustained the injury sometime between March 24, 2004, and June 20, 2004; Ray was murdered and his car wrecked in May 2004. Finally, pursuant to GBI requirements, on June 20, 2011, the investigator obtained a DNA sample from Jackson to confirm the preliminary match. While taking the sample, investigators spoke with Jackson — after he waived his *Miranda*[2] rights — and Jackson provided no insight into Ray's death, even lying about living in the same neighborhood. The DNA match was later confirmed.

At trial, Jackson did not dispute that he had killed Ray. Instead, Jackson asserted that he acted in self-defense. The defense theory was that the two men were romantically involved and that they fought after Ray confronted Jackson with his criminal

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

background and then Ray disclosed his HIV-positive status. According to the defense, Ray struck Jackson with a vodka bottle, and Jackson grabbed a kitchen knife to defend himself. The defense asserted that Jackson panicked and, knowing that Ray's house had been burglarized numerous times, staged the scene to make it appear as if the murder had occurred during a robbery. The defense explained at trial that the laundry, bleaching, and bathing was a result of Jackson's attempt to limit his exposure to HIV.

1. Though not raised by Jackson as error, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Jackson guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Jackson first argues that there was a fact question as to whether three of the non-homicide counts in the indictment (armed robbery, burglary, and possession of a knife during the commission

of a felony) were timely prosecuted, and, thus, that the jury should have been given relevant instructions on the statute of limitation and its tolling.[3] As Jackson acknowledges, there was no request for such an instruction, so this enumeration is reviewed for plain error. See OCGA § 17-8-58 (b).

To establish plain error with respect to jury instructions, Jackson "must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Hood v. State*, 303 Ga. 420, 425 (811 SE2d 392) (2018). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 32-33 (718 SE2d 232) (2011).

"In criminal cases, the statute of limitation runs . . . from the

---

[3] Jackson's statute of limitation argument also includes the count of aggravated assault. However, the aggravated assault count merged for sentencing purposes, and, thus, his claim of error with respect to that offense is now moot. See, e.g., *Solomon v. State*, 304 Ga. 846 (3) (823 SE2d 265) (2019).

time of the criminal act to the time of indictment." *Hall v. Hopper*,
234 Ga. 625, 626 (1) (216 SE2d 839) (1975). "[W]here an exception
is relied upon to prevent the bar of the statute of limitation[ ], it
must be alleged and proved." *Hollingsworth v. State*, 7 Ga. App. 16,
16 (65 SE 1077) (1909). Indeed, the State bears the burden at trial
"to prove that a crime occurred within the statute of limitation, or,
if an exception to the statute is alleged, to prove that the case
properly falls within the exception." (Citation and punctuation
omitted.) *Jenkins v. State*, 278 Ga. 598, 604 n.31 (604 SE2d 789)
(2004). Where a claim of instructional error is made, we examine
the jury charge as a whole. See *Woodard v. State*, 296 Ga. 803 (771
SE2d 362) (2015).

Here, as to each non-murder count of the indictment, the State
alleged, as an exception to the relevant limitation period, that
Jackson's "identity . . . was unknown to the State of Georgia until
June 20, 2011." See OCGA § 17-3-2 (2).[4] The gravamen of Jackson's

---

[4] "The period within which a prosecution must be commenced under Code
Section 17-3-1 or other applicable statute does not include any period in which:
. . . [t]he person committing the crime is unknown or the crime is unknown[.]"

argument is that, in the absence of an instruction, the jury would not have known about the State's burden with respect to the statute of limitation. According to Jackson, the trial court should have instructed the jury to consider "whether the State proved that the identity of the person who committed the crime was unknown until June 20, 2011, as averred in the indictment." While the trial court did not specifically instruct the jury on the statute of limitation each count of the indictment was read to the jury, and the jury was instructed to "consider each count in the indictment separately" and that the State was required to "prove *every material allegation in each count* and every element of the crime charged beyond a reasonable doubt for each count." (Emphasis supplied.) See *McLane v. State*, 4 Ga. 335, 342 (1848) (explaining that an exception to the statute of limitation is a material allegation that must be alleged in an indictment). The indictment was also sent back with the jury following the charge, and the jury was instructed that its deliberation could not commence until it received the indictment and other evidence. We must presume the jury followed the trial

court's instruction. See *Allen v. State*, 277 Ga. 502 (3) (c) (591 SE2d 784) (2004). Jackson cites no precedent requiring a more detailed instruction on the statute of limitation or the applicable tolling exception. See *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (818 SE2d 552) (2018) (recognizing that "[a]n error cannot be plain where there is no controlling authority on point" (citation and punctuation omitted)). Under these circumstances, we cannot say that the trial court's failure to specifically instruct the jury on the relevant statute of limitation or tolling amounts to "clear or obvious error." *Kelly*, 290 Ga. at 34.

3. Jackson next contends that the trial court erroneously permitted the State to adduce police reports concerning two prior burglaries at Ray's residence. According to Jackson, the reports were irrelevant, were inadmissible hearsay, and were offered through a witness who had no personal knowledge about either incident. Jackson also complains that the State used the reports to somehow connect him to the earlier incidents and to bolster its theory that Ray was not killed in self-defense.

We agree with the State, however, that any error with respect to the admission of these police reports was harmless. The evidence connecting Jackson to Ray's murder was significant; further, the jury was aware that Jackson was incarcerated at the time of one burglary (and, thus, could not have been involved), and the jury also learned that Ray himself believed that Jackson played no role in the other burglary. Accordingly, there is no reversible error.

4. Jackson next argues that the trial court erred when it failed to grant his motion for a mistrial following "repeated" testimony concerning Jackson's failure to come forward with information about the murder. Specifically, Jackson argues that the testimony violated *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991),[5] as well as Jackson's rights under the Fifth Amendment to the United States Constitution and his right against self-incrimination under the Georgia Constitution. This argument is not preserved.

During the State's re-direct examination of an investigating

[5] During the pendency of this appeal, this Court determined that Georgia's new Evidence Code abrogated the relevant holding in *Mallory*. See *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019).

detective, the following exchange occurred:

> Q. [D]id this defendant once ever come to you and say, "I killed John Ray in self-defense?"
> A. No, ma'am.
> Q. Had he come to you back in 2004 and said, "It was me. I'm the one you are looking for —"
> A. Yes, ma'am.
> Q. Would you have even needed to wait until he entered the department of corrections and his DNA was taken and a hit came back and it was later assigned to the cold case squad, would you have even needed to wait for that?
> A. No, ma'am.
> Q. Had this defendant said to you, "It was me. I did it, but it was in self-defense," would you have investigated —
>
> [Unrelated objection]
> Q. Had he said that, would you have investigated his claim?
> A. Absolutely.
> Q. Had anyone called you on the tip line and said, "This person said he did this, but it was in self-defense," would you have investigated that?
> A. Yes, ma'am.
> Q. Had this defendant said, "I was just trying —"
> [Defense counsel]: Your Honor, I think we need to approach at this point.

It was at this point that defense counsel, outside of the presence of the jury, moved for a mistrial on the basis that the State had been eliciting testimony that, he said, amounted to "burden shifting" and

implied that Jackson had "some duty to come forward to the police." Trial counsel advised the trial court that it was the "second time these kinds of questions ha[d] been directed to a witness" and that, though he "let it go the first time," a mistrial was necessary.

It is well settled that "'[a] motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion.'" (Citation omitted.) *Ragan v. State*, 299 Ga. 828, 833 (792 SE2d 342) (2016). As trial counsel recognized below — and Jackson continues to acknowledge on appeal — the motion for mistrial was not based on a single question, but, instead, was premised on allegedly improper testimony elicited throughout trial. The record reflects that the State had elicited similar testimony without objection from an earlier witness and, also, during its direct examination of the detective the prior day. It was only after Jackson had cross-examined both witnesses and the State had returned to this line of questioning on re-direct examination that the motion for mistrial was lodged. This is too late to claim error based on the pattern of questions. See *Coley v. State*, 305 Ga. 658, 662 (3) (827

SE2d 241) (2019) ("[B]ecause [Defendant's] motion for a mistrial was not made contemporaneous with the testimony that he complained about, the issue of whether the court abused its discretion in denying [his] later motion for mistrial is not properly before this Court for review."); *St. Romaine v. State*, 251 Ga. App. 212, 213 (554 SE2d 505) (2001) (Defendant's motion for a mistrial following the introduction of testimony concerning his possession of drugs "was untimely, as he permitted seven questions to be asked on the subject of marijuana after it came up and then four more questions on cocaine before making his motion. An untimely motion for a mistrial waives the point.").

5. Finally, Jackson alleges that trial counsel was ineffective in numerous ways. We address each argument in turn.

Jackson succeeds on his claims only if he demonstrates both that counsel's performance was deficient and that counsel's deficient performance was prejudicial to the defense. See *Terry v. State*, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). With respect to deficient performance, a claimant must show that his attorney "performed at

trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). When reviewing counsel's performance, we "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U. S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011) (quoting *Strickland v. Washington*, 466 U. S. 668, 689 (104 SCt 2052, 80 LE2d 674) (1984)). As such, "a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" (Citation omitted.) *Brown v. State*, 288 Ga. 902, 909 (708 SE2d 294) (2011).

As to the second *Strickland* prong, in order "to show that he was prejudiced by the performance of his lawyer, [a claimant] must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome.'" *Arnold v. State*, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013) (quoting *Strickland*, 466 U. S. at 694). Because a claimant must satisfy both prongs, this Court is not required to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U. S. at 697. See also *Rector v. State*, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009) ("If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong."). The trial court's factual findings and credibility determinations are reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts. *Suggs v. State*, 272 Ga. 85 (4) (526 SE2d 347) (2000).

(a) Jackson first argues that trial counsel was ineffective for failing to properly object and/or move for a mistrial with respect to approximately 18 questions that, he says, led to testimony regarding his failure to come forward to law enforcement concerning Ray's murder. Jackson contends that trial counsel should have objected

in each and every instance on the grounds that the questions and resulting testimony were inadmissible under *Mallory*, the Fifth Amendment to the United States Constitution, Georgia's constitutional protections against self-incrimination, and OCGA § 24-4-403 ("Rule 403").

First, the rule announced in *Mallory* — categorically excluding evidence of a criminal defendant's pre-arrest "silence or failure to come forward" to law enforcement — was an evidentiary holding decided under our old Evidence Code. See *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019). Jackson's trial, however, occurred after the effective date of Georgia's new Evidence Code, at which time *Mallory's* continuing validity was questionable. Indeed, at least two decisions decided by this Court before the time of Jackson's trial recognized as much. See *Yancey v. State*, 292 Ga. 812, 817 n.9 (740 SE2d 628) (2013) (noting that *Mallory* was decided under the old Evidence Code and declining to address whether it remained good law); *Romer v. State*, 293 Ga. 339, 343 n.4 (745 SE2d 637) (2013) (citing *Yancey).* Before *Orr*, this Court held that, because the

validity of *Mallory* was "subject to reasonable dispute," trial counsel was not ineffective for failing to lodge an objection under that decision as it was an "unsettled question of law." (Citation and punctuation omitted.) *Eller v. State*, 303 Ga. 373, 384 (811 SE2d 299) (2018).  Now that we have squarely held that *Mallory* was abrogated by Georgia's new Evidence Code, it is clear that a defendant cannot prevail on a claim of ineffectiveness on the basis that his trial counsel failed to rely on a case that was not applicable to his trial. See *Lockhart v. Fretwell*, 506 U. S. 364, 366 (113 SCt 838, 122 LE2d 180) (1993) (holding that there was no *Strickland* prejudice based on trial counsel's deficient performance where, in the time between the alleged deficient performance and the subsequent ruling on the ineffective assistance claim, the law on which counsel's alleged error was predicated was overruled).

Jackson next argues that trial counsel should have objected to and/or moved for a mistrial under the Fifth Amendment to the United States Constitution, arguing that,  under *Griffin v. California*, 380 U. S. 609 (85 SCt 1229, 14 LE2d 106) (1965), the

State violated his right to remain silent. *Griffin*, however, addresses whether a comment on a defendant's "failure to testify violate[s] the Self-Incrimination Clause of the Fifth Amendment." 380 U. S. at 611. Here, though Jackson did not testify, there has been no suggestion that the prosecutors commented on his exercise of this right.[6] Further, contrary to Jackson's position on appeal, the Fifth Amendment does not per se exclude testimony concerning a defendant's pre-arrest failure to come forward.[7] See *Simmons v. State*, 299 Ga. 370, 374-375 (788 SE2d 494) (2016) (recognizing that, under United States Supreme Court precedent interpreting the Fifth Amendment, "it is clear that testimony about a defendant's

---

[6] Jackson was interviewed in June 2011 and spoke with investigators after waiving his *Miranda* rights; the jury was aware of this interview. Later, in August 2011, law enforcement attempted to interview Jackson again, but he invoked his right to remain silent; there has been no argument that the State's questioning at trial implicated Jackson's invocation of his post-*Miranda* right to remain silent in the second interview. See *Doyle v. Ohio*, 426 U. S. 610, 619 (96 SCt 2240, 49 LE2d 91) (1976) ("We hold that the use [even] for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."). Indeed, Jackson notes in his brief that the jury was not told that he asserted his right to remain silent in the second interview.

[7] Jackson concedes in his supplemental brief that the Fifth Amendment does not provide a blanket exclusion on testimony concerning a defendant's pre-arrest silence.

failure to come forward is often admissible"). As such, Jackson's claim that trial counsel should have lodged a general objection under the Fifth Amendment is without merit.

Jackson also argues that trial counsel should have objected on the basis of Georgia's constitutional provision against self-incrimination, citing *Creamer v. State*, 229 Ga. 511 (192 SE2d 350) (1972) (right against self-incrimination under Georgia Constitution not violated by removing bullet from defendant), and *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017) (Georgia's constitutional provision against self-incrimination covers compelled self-incriminating acts and the right to refuse compelled breath tests). These cases are inapposite; neither case speaks to the admissibility of testimony concerning a defendant's failure to come forward to law enforcement, and the cases certainly do not stand for the proposition that trial counsel's failure to object here amounted to deficient performance. As Jackson recognizes in his brief, neither *Mallory* nor *Orr* was decided as a matter of Georgia constitutional law, and Jackson points us to no law — and we have found none — suggesting

that Georgia's constitutional provision concerning the right against self-incrimination, see Ga. Const. of 1983, Art. I, Sec. I, Par. XVI, would compel an objection from trial counsel. In fact, Jackson acknowledges in his supplemental brief that this Court has not spoken to this issue. As such, there is no merit to this argument. See *Williams v. State*, 302 Ga. 474, 482 (807 SE2d 350) (2017) (recognizing that "trial counsel's performance cannot be deemed deficient for not raising an unsettled question of law").

Finally, Jackson asserts that trial counsel should have objected to the various questions and answers under Rule 403,[8] complaining that trial counsel should have sought the exclusion of the testimony as "more prejudicial than probative." However, "the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.'" (Citation omitted.) *Olds v. State*, 299 Ga. 65, 70 (786 SE2d 633) (2016). "The 'major function' of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by

---

[8] Jackson does not assert that trial counsel should have lodged an objection under any other rule of evidence.

the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016). We note that Jackson has failed to engage in any Rule 403 analysis with respect to the individual questions and answers about which he complains, instead, simply making a blanket assertion that trial counsel should have lodged a Rule 403 objection in each instance. However, we agree with the testimony of trial counsel who indicated during the hearing on Jackson's motion for new trial that some of the testimony was, in fact, "innocuous," including that of a detective who answered "No, ma'am," to the question, "Did anybody ever . . . come forward and say, 'I saw this crime happen?'" Likewise, the State asked, "Did you ever find out why anyone would walk all through that house and leave clothes in the washing machine?" to which an investigator responded, "No one ever told me. No, ma'am."

Nevertheless, to the extent that the questions and answers at issue implicate Jackson's failure to come forward, the failure of trial counsel to object under Rule 403 did not prejudice the defense.

Though Jackson suggests that the questions and answers unfairly prejudiced his self-defense strategy, the evidence strongly suggested that the crime was not self-defense; indeed, Jackson tied up the victim, left him in a locked and alarmed residence, fled in Ray's vehicle and with his property, and then sped away when a police officer attempted to initiate a traffic stop. As such, trial counsel's failure to object in these instances under Rule 403 did not amount to ineffective assistance. See *Davis v. State*, 299 Ga. 180, 191 (787 SE2d 221) (2016) (recognizing that any possible deficient performance by counsel in failing to object under Rule 403 did not result in prejudice where the evidence was strong).

(b) Jackson next argues that trial counsel was ineffective for failing to properly object to the admission of the police reports concerning the prior burglaries, to object to testimony concerning the burglary reports, and, further, for failing to object to the reports being provided to the jury during deliberations. As discussed above, the admission of these reports was harmless; any attendant testimony concerning the reports would be equally harmless. As

such, even if we assume that trial counsel performed deficiently in this regard, we cannot say that, but for any possible error by trial counsel, the result of the proceeding would have been different.

(c) Jackson contends that trial counsel was ineffective for failing to object during closing argument when the State argued as follows:

> So what type of things are you to consider and what type of things are you not to consider? These things outside the circle . . . [p]assion, public opinion, unhappy with the police. [Defense counsel] said, "the police didn't do a good job," not to be considered. If you don't like what someone did, then send a letter to their boss, write it on the back of the indictment, but don't let it impact your decision making in this case.

Irrespective of whether the State's argument is improper, the trial court correctly concluded that trial counsel was not ineffective in this regard. At the hearing on Jackson's motion for new trial, counsel testified that, though he was concerned that the State's position might have been an inaccurate statement of the law, he did not object because he found it, again, "innocuous" and concluded that the statement would not impact the jury's decision. Trial counsel's

decision amounted to trial strategy, see *Holmes v. State*, 273 Ga. 644, 648 (543 SE2d 688) (2001), and we cannot say that "no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument." *Braithwaite v. State*, 275 Ga. 884, 886 (572 SE2d 612) (2002). As such, Jackson is not entitled to relief on this claim. See id. (trial counsel's decision not to object to "golden rule" argument not deficient performance where the decision was reasonable trial strategy).

(d)   Finally, the cumulative prejudice from any assumed deficiencies discussed in Division 4 (a) and (b) is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. See *Jones v. State*, 305 Ga. 750, 757 (4) (e) (827 SE2d 879) (2019). Accordingly, Jackson is not entitled to relief on his claim that trial counsel was ineffective on this basis.

6.   Although we find no error with respect to Jackson's

convictions, we do note that he was improperly sentenced for malice murder. Jackson was sentenced as a recidivist to life imprisonment without the possibility of parole for that offense under OCGA § 17-10-7 (c). However, at the time of the murder, OCGA § 17-10-7 (c) did not apply to capital felonies, such as malice murder.[9] See *Funderburk v. State*, 276 Ga. 554 (2) (580 SE2d 234) (2003).[10] Accordingly, "the sentence of life imprisonment without possibility of parole must be vacated and the case remanded to the trial court with direction to enter a legal sentence."[11] Id. at 555.

*Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur, except Blackwell, J., who concurs in judgment only in Division 2.*

---

[9] Though armed robbery "is treated as a capital offense for certain purposes . . . for the purpose of recidivist sentencing, armed robbery is not considered a capital felony." *Dempsey v. State*, 279 Ga. 546, 549 (615 SE2d 522) (2005). Accordingly, "the trial court was authorized to sentence him for that offense to life imprisonment, with no eligibility for parole." (Citation and punctuation omitted.) Id.

[10] As we have previously noted, in 2010 the General Assembly amended OCGA § 17-10-7 (c) to remove the exception for capital felonies. See *Hyde v. State*, 299 Ga. 135, 136 n.2 (786 SE2d 681) (2016) (citing Ga. L. 2010, p. 563, § 1).

[11] Nothing in the record before this Court suggests that Jackson may be sentenced to life without parole for malice murder. See *Funderburk*, 276 Ga. at 555 n.2 (explaining circumstances authorizing life without parole sentence for malice murder as they existed at the time of the offense in this case).

Decided June 24, 2019.

Murder. Fulton Superior Court. Before Judge Campbell.

*Margaret E. Bullard*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Teri B. Walker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.