**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 4, 2020**

# In the Court of Appeals of Georgia

A20A1122. DAVIS v. THE STATE.

MERCIER, Judge.

Following a jury trial, Arthur Davis was convicted of aggravated sexual battery.[1] Following the denial of his motion for new trial, Davis filed this appeal, claiming that the evidence was insufficient, that the trial court erred by refusing to give a requested jury charge and that he received ineffective assistance of counsel. Finding no error, we affirm.

1. Davis argues that the evidence was insufficient to support his conviction for aggravated sexual battery.

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no

---

[1] The jury found Davis not guilty of rape.

longer enjoys the presumption of innocence. We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.

*Dixon v. State*, 303 Ga. App. 517 (693 SE2d 900) (2010) (citations omitted). So viewed, the evidence shows the following. On August 15, 2015, the victim was spending time with friends, including Davis, at her boyfriend's house. After they had been at the house for a few hours, the group decided to go to Waffle House, but the victim said that she was tired, had "had too much to drink" and was going to stay at the house to sleep. She then took a shower and went to sleep in her boyfriend's bed, which was upstairs. Davis stayed at the house.

The victim woke to someone on top of her having sex with her, but she did not know who it was because it was dark in the room. She noted that the assailant was "much thinner" than her boyfriend, and she called her boyfriend's name. After the victim called her boyfriend's name repeatedly, the assailant leaned down and said "Shh, it's Arthur." The victim tried to push the assailant off of her and they fought for a few minutes. Then the victim heard a door close downstairs, after which she screamed and the assailant ran from the room. At trial, the victim testified that she did

2

not remember the assailant performing oral sex on her and that she did not consent to vaginal or oral sex with the assailant.

After returning from Waffle House, members of the group witnessed Davis walking downstairs. A friend of the victim testified that she thought it was unusual "[b]ecause [Davis] shouldn't be upstairs because it's [the boyfriend's] house and [the victim] was up there." The victim's boyfriend testified that Davis appeared "[l]ike he was in a hurry to get back down to where he was when we left him."

Disoriented, the victim rose from the bed and, after a few minutes, went downstairs. Members of the group observed that she was "hysterical," "crying" and "terrified." The victim asked her boyfriend if he had been in the bedroom with her, and he responded that he had not, as he had only just returned from Waffle House.

The victim ran to Davis and "punched him in the face a couple of times." Her boyfriend and a member of the group pulled the victim off of Davis, and she told them what happened. The victim's boyfriend then asked Davis what happened, if he had raped the victim, and Davis responded: "[a]ll I did was eat her p____." Her boyfriend called the police, Davis left, and when the police arrived the victim recounted to them what had occurred.

Following her conversation with the police, the victim submitted to a sexual assault examination. DNA swabs taken from the victim's "vaginal-cervical" area and her labia minora matched a DNA sample taken from Davis.

Davis claims that there was insufficient evidence to support his aggravated sexual battery conviction because the State failed to present evidence that he penetrated the victim's sexual organ with his tongue or any foreign object, pursuant to OCGA § 16-6-22.2.[2] Davis cites *Liger v. State*, 318 Ga. App. 373 (734 SE2d 80) (2012), disapproved of on other grounds by *Martin v. McLaughlin*, 298 Ga. 44, 46 (fn. 3) (779 SE2d 294) (2015), to support his claim that the State failed to put forth evidence of penetration of anything other than his penis. Specifically, he cites to a sentence in *Liger* that states that to show penetration during rape "it is not necessary that the vagina shall be entered, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." Id. at 376 (2) (citation and punctuation omitted). However, the cited sentence comes from a division of *Liger* that is physical precedent only and therefore is not binding authority. See Court of Appeals Rule 33.2 (a) (2);

---

[2] "A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b).

*Davis v. State*, 244 Ga. App. 345, 347 (3) (535 SE2d 528) (2000). Nonetheless, we find no merit to this argument.

"Penetration however slight will suffice to satisfy the statutory penetration element of OCGA § 16-6-22.2 and penetration may be proved by indirect or circumstantial evidence." *Madison v. State*, 329 Ga. App. 856, 863 (1) (c) (766 SE2d 206) (2014) (citation and punctuation omitted). The victim did not testify that Davis penetrated her vagina with his tongue, but she testified that she had been drinking alcohol and was very tired, fell asleep and awoke to Davis having vaginal sex with her.

In response to questioning by the victim's boyfriend, Davis stated, "[a]ll I did was eat her p__." When examining slang statements, it is important to remember that

> witnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts. Rather, the terms used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors can be presumed to have some knowledge of slang expressions in common parlance in the vernacular.

*Chitwood v. State*, 352 Ga. App. 218, 220 (1) (a) (834 SE2d 334) (2019) (citation and punctuation omitted). Jurors can be presumed to have some knowledge that Davis's

5

statement was meant to convey that he performed oral sex on the victim. Furthermore, swabs taken from the victim's "vaginal/cervical" area and "labia minora" matched a DNA sample taken from Davis. Here, based on the evidence presented, including the DNA results, testimony that the victim was incapacitated due to sleep and alcohol consumption, and Davis's statement, the jury was authorized to conclude that Davis committed aggravated sexual battery on the victim by placing his tongue, a foreign object, in her vagina without her consent. See id.; *Johnson v. State*, 351 Ga. App. 690, 694 (832 SE2d 676) (2019) (when a victim is intoxicated and her will is temporarily lost from intoxication, she is physically or mentally unable to give consent); *McWilliams v. State*, 304 Ga. 502, 506 (2) (b) (820 SE2d 33) (2018).

2. Davis also alleges that the trial court failed to give his requested jury charge regarding sexual battery as a lesser included offense of aggravated sexual battery. The offense of sexual battery is included in the offense of aggravated sexual battery as a matter of law, the only difference being that aggravated sexual battery contains the additional element of penetration. See *Smith v. State*, 310 Ga. App. 392, 394 (2) (713 SE2d 452) (2011); OCGA §§ 16-6-22.1 (b); 16-6-22.2; 16-1-6 (1).

"To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to

6

authorize the giving of a charge is a question of law." *Reddick v. State*, 301 Ga. 90, (1) (799 SE2d 754) (2017) (citation and punctuation omitted). However, "a charge request must be apt, a correct statement of law, and precisely adjusted to some theory in the case. If the evidence shows either the completed offense as indicted or no offense at all, the trial court should not instruct the jury on a lesser grade of the crime." *Smith*, supra at 395 (2) (citations and punctuation omitted).

Davis's defense at trial was that he performed consensual oral sex on the victim, and that he did not commit aggravated sexual battery because the statute requires that a "foreign object" penetrate the sexual organ or anus of another person, and he argued that "a tongue is not a foreign object." See OCGA § 16-6-22.2. However, "[t]he term 'foreign object' includes not only inanimate instruments, but also a person's body parts, such as a finger." *Madison*, supra at 863 (1) (b) (fn 3) (citation and punctuation omitted). Davis's tongue, one of his body parts, was a foreign object pursuant to OCGA § 16-6-22.2. See id. As such, Davis presents no valid argument as to why the sexual battery charge would have been appropriate given the facts of his particular case and his theory of the case as argued at trial. See *Smith*, supra at 395-396 (2).

3. Davis claims that he received ineffective assistance of trial counsel. To succeed on this claim he must demonstrate that counsel's performance was deficient and that his counsel's deficient performance was prejudicial to the defense. See *Jackson v. State*, 306 Ga. 266, 272 (5) (830 SE2d 99) (2019).

> When reviewing counsel's performance, we apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. As such, a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it.

Id. (citations and punctuation omitted). "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Simmons v. State*, 299 Ga. 370, 375 (3) (788 SE2d 494) (2016) (citation and punctuation omitted).

(a) Davis claims that his counsel failed to "properly" object to evidence that Davis did not attend a scheduled meeting with a police officer. At trial, the prosecutor asked the investigating officer if she ever tried to make contact with Davis. When the officer replied affirmatively, the prosecutor asked the officer to tell the jury about the contact. Davis's counsel objected, and a voir dire examination occurred outside the

8

presence of the jury, wherein the officer stated that she set up a time and date to meet with Davis but he failed to appear. Davis's counsel continued his objection but ultimately stated that he would not object to the witness simply stating that they had set up a time to meet and Davis did not meet with her. The trial court allowed the testimony, and when the jury returned, the officer testified that she had scheduled a time to meet with Davis but that they "didn't meet."

Davis fails to put forth argument as to how the outcome of his trial may have been different if his trial counsel had "properly" objected. See *Jackson*, supra ("in order to show that he was prejudiced by the performance of his lawyer, a claimant must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (citation and punctuation omitted). As Davis failed to satisfy the second prong, his claim that trial counsel's performance was deficient fails. See id. (an appellate court need not address both prongs if the defendant makes an insufficient showing on one); *Simmons*, supra at 375-376 (3) (defendant's claim that trial counsel was ineffective for not objecting to "failure to come forward" evidence did not satisfy second prong of required test when, given evidence in case, there was no reasonable probability of a different result at trial).

(b) Davis argues that his trial counsel violated his right to remain silent by stating during voir dire and in his opening statement that Davis would testify at trial. While questioning prospective jurors, Davis's counsel asked if any of the jurors would like to hear Davis "get on this witness stand and tell his version of what occurred." Apparently, several jurors responded affirmatively. Defense counsel also asserted in opening statements that Davis would testify at trial. However, Davis ultimately chose not to testify. During his closing argument, Davis's counsel stated that while he had initially said that Davis would testify, "[a]fter the lack of evidence that was presented in this case, after consulting with [his counsel], I informed [Davis] that he should not testify because of the lack of evidence that's presented in this case."

As a general rule, we do not second-guess defense trial strategies, particularly with respect to opening statements and closing arguments. See *Watkins v. State*, 285 Ga. 107, 110 (3) (b) (674 SE2d 275) (2009). As with *Watkins*, the decision not to present Davis's testimony "was a reasonable strategic decision in light of counsel's assessment of the case at the close of the State's case and, consequently, cannot support an ineffective assistance of counsel claim." Id.

(c) Davis claims that his trial counsel was ineffective for failing to object to his "custodial statements that were the product of the equivalent of interrogation." The arresting officer testified that he went to Davis's home to arrest him and observed that Davis's children were in the home. He escorted Davis to the patrol vehicle but did not handcuff Davis in front of his children. Davis thanked the officer and said that he did not see his children very often and that as a result of the situation "between him and his wife" he " just snapped. A situation like that will make you snap."

"[A] spontaneous and unsolicited statement not made in response to any form of custodial interrogation is not subject to the strictures of *Miranda* and is admissible without the warnings having been given." *Phillips v. State*, 285 Ga. 213, 215 (2) (675 SE2d 1) (2009). The officer testified that he was not asking Davis any questions; instead, he and Davis "were just still discussing the whole situation about his children, that his children were in the house." The State presented evidence that Davis's statement was a spontaneous comment made before any custodial interrogation, and thus was not subject to the strictures of *Miranda*. See *Pinckney v. State*, 259 Ga. App. 316, 318 (1) (a) (576 SE2d 677) (2003). Accordingly, Davis has not shown that his trial counsel was ineffective for failing to challenge the admission

11

of the statement. See *Penny v. State*, 248 Ga. App. 772, 776 (2) (c) (547 SE2d 367) (2001).

(d) Davis claims that his trial counsel was ineffective for failing to request a jury charge on the definition of penetration pursuant to *Liger*, supra. "When a claim of ineffective assistance is based on the failure to request a jury charge, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial." *Bradley v. State*, 322 Ga. App. 541, 545 (3) (a) (745 SE2d 763) (2013) (citation and punctuation omitted). As stated in Division 1, the cited provision of *Liger* is physical precedent only. And given the evidence, Davis has not shown a reasonable probability that a charge based on the language in *Liger*, even if appropriate, would have changed the outcome of the trial. See generally *Shaw v. State*, 292 Ga. 871, 877 (3) (c) (742 SE2d 707) (2013).

(e) Finally, Davis claims that the alleged errors by his trial counsel, viewed cumulatively, had the effect of denying him the right to counsel. "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel - at least where those errors by the court and counsel involve evidentiary

12

issues." *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020). We have considered collectively any alleged deficient performance by trial counsel and conclude that the cumulative prejudicial effect of such errors, if any, does not require a new trial. See *Lyons v. State*, __ Ga. ___,at *22 (8) (a) (S20A0536, decided June 1, 2020).

*Judgment affirmed. Miller, P. J., and Coomer, J., concur.*