S10A1133. WHITUS v. THE STATE.

(700 SE2d 377)

CARLEY, Presiding Justice.

Appellant Madonna Whitus was charged with the malice murder of Kathie Durant and other offenses. Based upon an initial psychiatric assessment, the trial court ordered that Appellant "be subjected to a full psychiatric assessment and evaluation at the public expense addressing" her competence to stand trial and the degree of her mental competence at the time of the crimes. After further psychiatric evaluation pursuant to that order, Dr. Matthew W. Norman reported that, in his opinion with a reasonable degree of medical certainty, Appellant was competent to stand trial and, at the time of the alleged offenses, she had the mental capacity to distinguish right from wrong and was not laboring under a delusional compulsion, although she was suffering from borderline personality disorder and possibly bipolar disorder. After a jury trial, Appellant was found guilty of all offenses with which she was charged. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for murder and to various terms of years for exploitation of a disabled adult, concealing the death of another, and two counts of identity fraud. Appellant appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that, at the request of Father Eugene Barrette, the victim permitted Appellant to come live with her in her townhouse because Appellant was homeless. After the victim told Appellant that her cats would have to stay outside, the victim's dog disappeared. The victim required Appellant to move out, but soon allowed her to

---

[*] The crimes occurred from December 1, 2007 to December 8, 2007, and the grand jury returned an indictment on May 23, 2008. The jury found Appellant guilty on September 11, 2008, and the trial court entered the judgments of conviction and sentences on September 19, 2008. The motion for new trial was filed on September 19, 2008, amended on February 20, 2009, and denied on April 22, 2009. Appellant filed the notice of appeal on May 21, 2009. The case was docketed in this Court for the April 2010 term and submitted for decision on the briefs.

move back in, although the victim would complain about Appellant's bad temper. Appellant would yell and curse at the victim, and threw away pictures which the victim had displayed in her home. In online communications found on a computer in Appellant's bedroom, she threatened to kill the victim and later asked what medications would make her "chill out."

Appellant began to use the victim's debit and credit cards and, on November 15, 2007, a police officer found that Appellant was in possession of the victim's social security card, driver's license, and three checks made out to the victim, including a forged signature and misspelling of her name. During the week prior to the victim's death, Appellant extensively used the victim's debit and credit cards for Appellant's own personal purchases. Appellant obtained a prescription for doxepin, ordered that drug online, and possessed bottles thereof. Doxepin was not prescribed for the victim, as it would have been too dangerous due to her heart condition.

On the morning of December 8, 2007, Appellant called Father Barrette pastor and a friend, told them that the victim was dead, and refused to call 911 because she would be in trouble. Appellant then left the townhouse, withdrew $700 from the victim's account, attempted to deposit a $55,000 forged check drawn on that account into Appellant's own account, and used the victim's credit and debit cards numerous times. Either that day or the week before, Appellant also tried to pawn the victim's jewelry. Handwriting analysis showed that Appellant had signed the victim's name on many checks and on a note giving Appellant permission to use the victim's credit cards.

Appellant eventually returned to the townhouse, and police officers arrived, finding the victim in an upstairs bedroom lying on a shower curtain, wearing diapers, with bruises and scrapes, a bone protruding from her arm, and bedsores on her back. Appellant told police that the victim had fallen out of bed, had been on the floor for about a week, and had asked Appellant not to call a doctor. Appellant had given the victim drinks and medication the night before. The victim's death was caused by a lethal level of doxepin which was eight times the highest recommended therapeutic level and would have required 40 capsules. The injuries on the victim's body had occurred some days prior to death.

Appellant contends that the circumstantial evidence did not exclude the reasonable hypothesis that the victim, who had been treated for depression, took the doxepin without Appellant's knowledge. Appellant relies on evidence that an article on doxepin was accessed in the victim's name from a computer in the townhouse at the same time that her debit card was being used at a retail store. However, assuming that the time is accurate, those incidents occurred five days before the victim's death. Other evidence showed

that the victim was on the floor for days, unable to obtain food or drink or to take a 40-capsule drug overdose herself.

> " '[Q]uestions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law.' (Cit.)" [Cit.] It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient. [Cit.]

*Brooks v. State*, 281 Ga. 514, 515-516 (1) (640 SE2d 280) (2007). The jury "was authorized to reject as unreasonable possibilities which were only theoretical, as [that] now offered by [Appellant]. [Cit.]" *Treadwell v. State*, 285 Ga. 736, 743 (4) (684 SE2d 244) (2009).

Reviewing the evidence in the light most favorable to the verdicts, we conclude that it was sufficient to exclude every reasonable hypothesis save that of Appellant's guilt and to enable a rational trier of fact to find her guilty beyond a reasonable doubt of the crimes for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Treadwell v. State*, supra; *Marks v. State*, 280 Ga. 70, 72-73 (1) (a) (623 SE2d 504) (2005).

2. Appellant further contends that trial counsel was ineffective in failing to obtain a full forensic evaluation of Appellant after viewing Dr. Norman's reports, as they show that he only conducted one three-hour interview with her while she was on several medications and that she had a significant family and individual history of mental illness, as well as difficulty with issues of right and wrong.

> To prevail on this claim under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), [Appellant] " 'must show both deficient performance by trial counsel and actual prejudice. (Cits.)' (Cit.)" [Cit.] " 'On appeal, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. (Cits.)" (Cit.)' (Cit.)" [Cit.]

*Jennings v. State*, 282 Ga. 679, 680 (2) (653 SE2d 17) (2007).

> In a non-capital case, a decision to forego or curtail the investigation of the accused's mental health is not as likely

to be unreasonable [as in a death penalty case]. [Cit.] Ordinarily, the lack of [such] investigation [even when there has been] a previous mental hospitalization is reasonable when an expert has determined that the defendant is fit to stand trial or that he was sane at the time of the offense. [Cits.]

*Martin v. Barrett*, 279 Ga. 593, 594 (619 SE2d 656) (2005). Trial counsel requested and obtained a full psychiatric evaluation of Appellant. He testified that he believed that the evaluation was fair and balanced and that he had no reason to disagree and request additional testing. *Albert v. State*, 283 Ga. App. 79, 80 (640 SE2d 670) (2006). Appellant "has not shown that counsel unreasonably relied on [Dr. Norman's] evaluation . . . ." *Shabazz v. State*, 293 Ga. App. 560, 563 (3) (a) (667 SE2d 414) (2008). "Counsel was not ineffective, then, when he failed to make a meritless motion for an additional examination. [Cit.]" *Albert v. State*, supra at 81.

Furthermore, trial counsel also testified that, in consultation with Appellant, he made the strategic decision of presenting the defense that she had no malice or motive and did not kill the victim, rather than presenting the conflicting defense of insanity and having to confront Dr. Norman's rebuttal testimony. Appellant has failed to show that this decision resulted from inattention or was otherwise an unreasonable strategy. See *Martinez v. State*, 284 Ga. 138, 142 (4) (663 SE2d 675) (2008); *Starks v. State*, 283 Ga. 164, 168 (6) (d) (656 SE2d 518) (2008). Compare *Martin v. Barrett*, supra at 595. Thus, Appellant did not "carry [her] threshold burden of showing deficient performance by trial counsel. [Cit.]" *Martinez v. State*, supra.

"Although other attorneys might have explored the mental issue further, we cannot conclude that the investigation by and tactical judgment of ([Appellant's] attorney) was outside the wide range of reasonably effective assistance." [Cit.]

*Hammond v. State*, 264 Ga. 879, 883 (4) (b) (452 SE2d 745) (1995). Moreover, even assuming that trial counsel's performance was deficient, Appellant has failed to meet the second prong of *Strickland* by showing " " "that there is a reasonable probability that the trial result would have been different if not for the deficient performance. (Cit.)" (Cit.)' [Cit.]" *Devega v. State*, 286 Ga. 448, 450 (4) (689 SE2d 293) (2010). At the hearing on the motion for new trial, a psychologist testified that there has still not been a full forensic evaluation, as Dr. Norman failed to perform any type of psychological testing. However, the psychologist did not evaluate Appellant either and was

unable to offer any opinion contrary to Dr. Norman's or to determine that different testing would lead to such a contrary opinion. Appellant "has not shown what the result of any [additional] examination would be, and thus fails to establish prejudice by showing that the result of her trial would have been different if [such] a psychological examination was pursued. [Cit.]" *Taylor v. State*, 282 Ga. 693, 696 (2) (b) (653 SE2d 477) (2007). See also *Hinely v. State*, 275 Ga. 777, 781 (2) (b) (573 SE2d 66) (2002); *Shabazz v. State*, supra. " 'Speculation is insufficient to satisfy the prejudice prong of *Strickland*, supra. (Cits.)' [Cits.]" *Devega v. State*, supra at 450 (4) (a).

3. Citing *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985), Appellant asserts that the trial court erroneously denied appellate counsel's request, on motion for new trial, for an order requiring a full forensic evaluation and providing funds to hire an expert to conduct the evaluation. However, trial counsel's failure to obtain such an order is the basis of Appellant's ineffectiveness claim. By failing to request an additional evaluation and funds therefor, trial counsel failed to preserve this issue for appeal. See *Mobley v. State*, 269 Ga. 738, 741 (2) (505 SE2d 722) (1998); *May v. State*, 146 Ga. App. 416 (1) (246 SE2d 432) (1978). Moreover, as already discussed, Appellant "did receive the assistance of a psychiatrist at the [S]tate's expense. *Ake* rejected the notion that an 'indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.' [Cit.]" *Callaway v. State*, 208 Ga. App. 508, 510-511 (1) (431 SE2d 143) (1993) (also recognizing that " "[w]hether to grant the motion (for a second psychiatric examination) was in the discretion of the trial court" "").

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010.

*Daniel L. Henderson*, for appellant.

*Patrick H. Head, District Attorney, Jesse D. Evans, Dana J. Norman, John R. Edwards, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.