S12A1669. ARNOLD v. THE STATE.
(737 SE2d 98)

BLACKWELL, Justice.

Jesse Lamar Arnold was tried by an Athens-Clarke County jury and convicted of the aggravated stalking and aggravated assault of his estranged wife, Lakeisha, and the murder of Eric Mattox. Arnold appeals, contending only that he was deprived of the effective assistance of counsel because his lawyer, he says, did not adequately investigate his mental health in her preparation for trial. We find no merit in this contention and affirm the judgment below.[1]

---

[1] The events that form the basis for the convictions occurred on December 15, 1999. Arnold was indicted on January 12, 2000 and charged with malice murder, felony murder, aggravated stalking, and aggravated assault. His trial commenced on May 8, 2000, and the jury returned its verdict on May 10, 2000, finding Arnold guilty on all counts. The verdict as to felony murder was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and Arnold was sentenced to imprisonment for life for malice murder, a consecutive term of imprisonment for 10 years for aggravated stalking, and a consecutive term of imprisonment for 20 years for aggravated assault. Arnold filed a motion for new trial on May 25, 2000, and the trial court denied that motion on November 15, 2010. Arnold timely filed his notice of appeal on December 14, 2010, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Arnold and Lakeisha separated in August 1999. Shortly after the separation, Lakeisha went to court and obtained a protective order, which "enjoined and restrained [Arnold] from having any contact with [Lakeisha] directly, indirectly, or otherwise at any time, at any location." Early on the morning of December 15, 1999, Arnold found Mattox and Lakeisha asleep — both unclothed from the waist down — in the back seat of her car. Arnold fired several shots from a .40 caliber handgun, four of which struck Mattox, and two of which struck Lakeisha. One of the shots that struck Mattox — a shot to his head, fired from close range — proved to be fatal. After the shooting, Arnold went to the home of his mother-in-law, where he admitted to the shooting, and he later surrendered to law enforcement. Although Arnold does not dispute that the evidence is sufficient to sustain his convictions, we have independently reviewed the record, and we conclude that the evidence adduced at trial, including the eyewitness testimony of Lakeisha, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Arnold was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Ross v. State*, 279 Ga. 365, 366 (1) (614 SE2d 31) (2005); *Thrasher v. State*, 265 Ga. 401, 402 (1) (456 SE2d 578) (1995).

2. Arnold contends that he was denied the effective assistance of counsel because his lawyer did not investigate his mental health more thoroughly. In particular, Arnold complains that his lawyer failed to obtain a psychological evaluation to assess his competence to stand trial, whether he might have a viable insanity defense, and whether he might properly assert a plea of guilty but mentally ill. To prevail on a claim of ineffective assistance, Arnold must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, Arnold must prove that she performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyer, Arnold must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III)

(120 SC 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C).

(a) We turn first to the question of performance, and as we do so, we bear in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U. S. at 689 (III) (A). As the United States Supreme Court has explained,

> [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689-690 (III) (A) (citations and punctuation omitted). In this case, Arnold has failed, we think, to overcome the "strong presumption" that his lawyer rendered "reasonable professional assistance."

At the hearing on his motion for new trial, Arnold called his trial lawyer to testify, and she explained that she was aware as she prepared for trial that Arnold had been treated for mental health issues in the past. For this reason, she obtained and reviewed mental health records from Charter Behavioral Health System, which show that Arnold was admitted to a Charter facility in 1997, evaluated by a psychiatrist, diagnosed with major depression, and treated with antidepressant medications. She interviewed the psychiatrist, who had evaluated Arnold both at the time of his admission and the time of his discharge from the Charter facility, and who also had seen Arnold in two outpatient visits in the weeks following his discharge. The lawyer also confirmed that Arnold had not received further treatment for any mental health issues since his treatment at the

Charter facility. In addition, the lawyer drew upon her own extensive experience as a criminal defense lawyer and found no indications in her interactions with Arnold that suggested that further investigation or evaluation of his mental health would be worthwhile.[2] Based on these things, the lawyer declined to request a psychological evaluation of Arnold, and she instead decided to focus her efforts on developing evidence of provocation that would warrant a conviction for voluntary manslaughter as a lesser included offense of murder.[3] As a part of that defense, she called the psychiatrist who had evaluated Arnold at the Charter facility to testify at trial about the relationship between Arnold and Lakeisha, and while testifying, the psychiatrist touched upon some of the mental health issues for which Arnold had been treated.

This is not a case in which counsel "made *no* effort" to investigate the potential for a defense or plea based on mental health issues, *McKiernan v. State*, 288 Ga. 140, 142 (1) (702 SE2d 170) (2010) (emphasis in original), nor is this a case in which counsel relied exclusively upon her own lay evaluation of the mental health of her client. Cf. *Martin v. Barrett*, 279 Ga. 593, 595 (619 SE2d 656) (2005) (defense counsel's performance was deficient where counsel, though aware that defendant recently had been treated for mental health issues, failed to review readily available mental health records or obtain a mental health evaluation and instead relied exclusively upon their own observations of the defendant as a basis for declining further investigation). To the contrary, the lawyer in this case obtained and reviewed the available mental health records, discussed the matter with a mental health professional who previously had evaluated and treated Arnold, and confirmed that Arnold had received no additional treatment for mental health issues.[4] Based on those things, as well as her own assessment of his mental health, she made

---

[2] When Arnold was tried, his lawyer had been practicing law for more than 20 years, and most of her practice had been criminal defense. At the hearing on the motion for new trial, she testified that she had tried approximately 300 criminal cases, including numerous homicide cases, and that she taught trial advocacy at the University of Georgia School of Law. During her time as a criminal defense lawyer, she had represented numerous clients with mental health issues.

[3] At trial, the court charged the jury on voluntary manslaughter as a lesser included offense.

[4] A psychologist testified at the hearing on the motion for new trial that the symptoms reflected in the Charter records show not only that Arnold suffered from depression, but suggest that Arnold also may have suffered a bipolar or other serious mood disorder. But there is no evidence that the trial lawyer should have suspected that the diagnosis of major depression might be incomplete. "The reasonableness of counsel's conduct is to be viewed as of the time of trial and under the circumstances of the case. It is not to be viewed by hindsight." *Futch v. State*, 286 Ga. 378, 381 (2) (a) (687 SE2d 805) (2010) (citation and punctuation omitted).

a strategic decision to devote her limited time and resources to pursuing a case for voluntary manslaughter. "Although other attorneys might have explored the mental issue further, we cannot conclude that the investigation by and tactical judgment of [Arnold]'s attorney was outside the wide range of reasonably effective assistance." *Whitus v. State*, 287 Ga. 801, 804 (2) (700 SE2d 377) (2010) (citations and punctuation omitted). Accordingly, Arnold has failed to overcome the "strong presumption" that his trial lawyer discharged her duties to him in an objectively reasonable manner.

(b) In any event, Arnold also has failed to show that he was prejudiced by the failure of his trial lawyer to request a mental health evaluation. "Pursuant to *Strickland*, [Arnold] must offer more than speculation to establish prejudice." *Hambrick v. Brannen*, 289 Ga. 682, 684 (715 SE2d 89) (2011). "It is not enough to show merely that counsel unreasonably failed to inquire into his mental state — he must show a reasonable probability that such an evaluation would have affected the outcome at trial." *Devega v. State*, 286 Ga. 448, 450 (4) (a) (689 SE2d 293) (2010) (citations and punctuation omitted). Although a psychologist testified at the hearing on the motion for new trial that some possibility existed that Arnold still was suffering from serious mental health issues at the time of his crimes and trial, the psychologist never evaluated Arnold or even reviewed the transcript of his trial. And the psychologist admitted that he was unable to give an opinion about whether Arnold was, in fact, suffering from any mental health issues at the time of his crimes and trial.[5] Consequently, Arnold "has not shown what the result of any additional examination would [have been], and thus fails to establish prejudice by showing that the result of [his] trial would have been different if such a psychological examination was pursued." *Whitus*, 287 Ga. at

---

[5] The psychologist only became involved with this case in June 2009, when he was contacted by appellate counsel for Arnold, nearly ten years after the crimes for which Arnold was convicted, and more than nine years after the trial. Because so much time had passed, the psychologist explained that, even if he undertook an evaluation of Arnold, he would have great difficulty in forming a reliable opinion about Arnold's mental health at the time of the crimes and the trial. We take this opportunity to note that extended delays in proceedings on motions for new trial "put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial," and we remind that "it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012). Nevertheless, any failure to discharge that duty in this case "does not affect the outcome of this appeal . . . because [Arnold] has enumerated no error associated with the delay." *Morgan v. State*, 290 Ga. 788, 789, n. 2 (725 SE2d 255) (2012).

805 (2) (citations and punctuation omitted). Cf. *Martin*, 279 Ga. at 595-596 (prejudice shown by testimony of mental health expert who examined defendant).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 2013.

*J. Rob McNiff*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.