**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**August 17, 2021**

# In the Court of Appeals of Georgia

A21A1118. BENTON v. THE STATE.

DILLARD, Presiding Judge.

Turner Benton appeals his convictions for two counts of aggravated assault, arguing that (1) the trial court erred in sentencing him as a recidivist because the State failed to prove he had three prior convictions; (2) the trial court's jury instruction regarding aggravated assault (with a deadly weapon) violated his due-process rights; and (3) his counsel was ineffective in various respects. For the reasons noted *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on July 4, 2017, Tyrone Ransom was working in a convenience store when Benton approached him and appeared to be irritated. Benton accused Ransom of

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

stealing his weed whacker and demanded that he admit it; but Ransom adamantly denied the allegation. The dispute then escalated, and the two men began fighting. And at some point during the altercation, Benton retrieved a knife from his pocket and stabbed Ransom, who was unarmed and unaware that Benton had a weapon. The entire altercation was recorded by surveillance cameras.

Thereafter, Benton was charged with two counts of aggravated assault. And following a jury trial, Benton was convicted of one of those charges and acquitted of the other. Benton then filed a motion for a new trial, and after a hearing, the trial court denied it. This appeal follows.

1. Benton first argues that the trial court erred in sentencing him under OCGA § 17-10-7 (c) because the State failed to prove he had three prior felony convictions, which is required for that statute to apply. We disagree.

In relevant part, OCGA § 17-10-7 (c)—which applies when a defendant is sentenced as a recidivist—provides:

> Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for *three felonies* or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for

2

such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.[2]

And in support of its request that Benton be sentenced as a recidivist, the State presented certified copies of his convictions for three prior felonies. In response, Benton's counsel informed the court that he had no objection to the admission of this evidence.

On appeal, Benton concedes that he was convicted of three prior felonies, but argues that, as to the first one, he was sentenced as a first offender, and later, was exonerated of that offense under the First Offender Act when he successfully completed probation. In this regard, the First Offender Act provides that, under certain circumstances, the court "may, without entering a judgment of guilt and with the consent of the defendant: (1) defer further proceeding and place the defendant on probation as provided by law; or (2) [s]entence the defendant to a term of

---

[2] (Emphasis supplied).

confinement as provided by law."[3] And particularly relevant here, OCGA § 42-8-60 (e) (1) further provides:

> A defendant sentenced pursuant to this article shall be *exonerated* of guilt and shall stand discharged as a matter of law as soon as the defendant . . . *[c]ompletes the terms of his or her probation*, which shall include the expiration of the sentence by virtue of the time frame of the sentence passing, provided that such sentence has not otherwise been tolled or suspended . . . .[4]

So, turning to the conviction at issue, Benton pleaded guilty in 1990 to selling a controlled substance, and he was sentenced as a first offender to five years, with six months to be served in confinement and the remainder on probation. This much is undisputed between the parties. Benton also acknowledges that three different petitions for adjudication of guilt and imposition of sentence were filed as to that conviction, alleging that he violated his probation in various respects. Nevertheless, Benton argues that he was ultimately exonerated of his 1990 conviction under OCGA

---

[3] *Kaylor v. State*, 312 Ga. App. 633, 634 (719 SE2d 530) (2011) (punctuation omitted); OCGA § 42-8-60 (a) ("When a defendant has not been previously convicted of a felony, the court may, upon a guilty verdict or plea of guilty or nolo contendere and before an adjudication of guilt, without entering a judgment of guilt and with the consent of the defendant, defer further proceedings and: (1) Place the defendant on probation; or (2) Sentence the defendant to a term of confinement.").

[4] (Emphasis supplied).

§ 42-8-60 (e) (1) because his probation was never actually revoked by the trial court; but this contention is belied by the record. Indeed, the case number for the 1990 conviction is 090-0541-G, and the record includes three different orders in that case revoking Benton's probation. Curiously, Benton even cites to these revocation orders in support of his conclusory allegation that his probation was never revoked.[5] In any event, Benton's probation in the 1990 case *was* revoked, he was *not* exonerated under OCGA § 42-8-60 (e), and thus, the conviction qualifies as a prior felony conviction such that the trial court did not err in sentencing him as a recidivist under OCGA § 17-10-7 (c).

2. Benton next argues the trial court's jury charge on aggravated assault was erroneous because it did not instruct the jury that the State was required to prove that the offense was committed in the specific manner alleged in the indictment. Again, we disagree.

---

[5] In support of his argument that his probation was never revoked, Benton cites only to the State's three petitions for adjudication of guilt and imposition of sentence and the corresponding orders by the court, granting those petitions and revoking his probation. While the trial court and the parties discussed testimony given by Benton's probation officer at one of the revocation hearings, the transcript of that hearing is not included in the record and neither party cites to it in their briefs. But regardless of the officer's testimony, the trial court's three orders revoking Benton's probation as to his 1990 conviction are sufficient proof that his probation was revoked and he was never exonerated of that conviction.

As an initial matter, because Benton did not object to the aggravated-assault jury instruction below, we review this claim only for plain error.[6] And as our Supreme Court has explained, "[u]nder plain error review, we will reverse the trial court only if the alleged instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings."[7] But here, even if the trial court erred in giving this jury instruction (plain or otherwise), any such error was ultimately cured by the court.

Specifically, Benton contends that the trial court's aggravated-assault jury instruction was erroneous because the indictment charged him with committing aggravated assault by stabbing the victim with a knife, but the instruction did not specify the manner in which the offense was allegedly committed. It is, of course, "axiomatic that, in criminal prosecutions, the court's instructions must be tailored to

---

[6] *See State v. Kelly*, 290 Ga. 29, 31-33 (1) (a) (718 SE2d 232) (2011) (holding that unobjected to jury instructions are subject to plain-error review when the defendant subsequently alleges in his motion for a new trial and on appeal that the instruction was erroneous).

[7] *Cato v. State*, 304 Ga. 496, 498 (2) (820 SE2d 41) (2018) (punctuation omitted).

fit the charge in the indictment and the evidence adduced at trial."[8] And this is

particularly true when "the offense charged may be committed in one of several ways,

but the indictment charges one specific method."[9] But importantly, in reviewing a

challenge to the trial court's jury instruction, this Court "views the charge as a whole

to determine whether the jury was fully and fairly instructed on the law of the case."[10]

Here, the jury found Benton not guilty of aggravated assault as alleged in

Count 1 of the indictment, but guilty of the offense as alleged in Count 2. And Count

2 of the indictment charged Benton with committing the offense of aggravated assault

in violation of OCGA § 16-5-21, alleging that "on or about the 4th Day of July, 2017,

[he] did make an assault upon the person of [Ransom] with a deadly weapon, to wit

a knife, by stabbing him in the chest . . . ." And as we have explained, "[a]verments

in an indictment as to the specific manner in which a crime was committed are not

---

[8] *Talton v. State*, 254 Ga. App. 111, 112 (1) (561 SE2d 139) (2002) (punctuation omitted); *accord Walker v. State*, 146 Ga. App. 237, 244 (2) (246 SE2d 206) (1978).

[9] *Talton*, 254 Ga. App. at 112 (1) (punctuation omitted); *accord Walker*, 146 Ga. App. at 244 (2).

[10] *Bryant v. State*, 354 Ga. App. 603, 605 (839 SE2d 680) (2020) (punctuation omitted).

mere surplusage."[11] Indeed, such averments must be "proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law."[12] Our analysis necessarily begins, then, with OCGA § 16-5-21 (a), which provides that:

A person commits the offense of simple assault when he or she either:

(1) Attempts to commit a violent injury to the person of another;

or

(2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

In this case, Benton argues that the trial court erred by instructing the jury on aggravated assault as defined in OCGA § 16-5-21 (a) (2), rather than OCGA § 16-5-21 (a) (1), because the indictment alleged that he attempted to inflict a violent injury

---

[11] *Talton*, 254 Ga. App. at 112 (1).

[12] *Id.* (punctuation); *see Ross v. State*, 195 Ga. App. 624, 625 (1) (b) (394 SE2d 418) (1990) ("If the indictment sets out the offense as done in a particular way, *the proof must show it so*, or there will be a variance. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense *or of the manner in which it was committed*. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance. To permit the prosecution to prove that a crime was committed in a wholly different manner than that specifically alleged in the indictment would subject the accused to unfair surprise at trial and constitute a fatal variance." (punctuation omitted)).

8

on Ransom with a knife, not that he placed the victim in reasonable apprehension of immediately receiving a violent injury. And in support, Benton primarily relies on *Talton v. State*,[13] in which we held that a trial court's jury charge on aggravated assault was erroneous because the court instructed that "if the pointing of a firearm places the victim in reasonable apprehension of receiving an immediate violent injury, the crime of aggravated assault has occurred[,]"[14] while the indictment alleged that the aggravated assault was committed by a specific method—*shooting* the victim with a pistol.[15] The *Talton* Court explained that "[g]iven the way the indictment was drafted, the jury was required to find beyond a reasonable doubt that [the defendant] *shot* a handgun at [the victim] in order to find him guilty of aggravated assault."[16] As a result, we held under those circumstances that "a limiting instruction would not remedy the error."[17]

Turning to the jury charge at issue, the trial court instructed as follows:

---

[13] 254 Ga. App. 111 (561 SE2d 139) (2002).

[14] *Id.* at 111 (1) (punctuation omitted).

[15] *See id.* at 112 (1).

[16] *Id.* (punctuation omitted) (emphasis supplied).

[17] *Id.*

9

Now, Ladies & Gentlemen, the defendant is charged with the offense of aggravated assault in two counts. I will now define the offenses for you. A person commits the offense of aggravated assault when that person assaults another person with intent to murder. To constitute such an assault *actual injury to the alleged victim need not be shown*. It is only necessary that the evidence show, beyond a reasonable doubt, that the defendant attempted to cause a violent injury to the alleged victim.

. . .

A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an assault *actual injury to the alleged victim need not be shown*. It is only necessary that the evidence show beyond a reasonable doubt that the defendant intentionally committed an act that *placed the alleged victim in reasonable fear of immediately receiving a violent injury*.

The State must also prove as a material element of aggravated assault as alleged in this case that the assault was made with a deadly weapon. A knife, if and when used in making an assault upon another person, is not a deadly weapon per se, but may or may not be a deadly weapon depending on the manner in which it is used and the circumstances of the case. You may or may not infer the lethal character of the instrument in question from the nature and extent of the injury, *if any*, inflicted upon the person allegedly attacked.[18]

---

[18] (Emphasis supplied).

10

Applying *Talton*, the error in the trial court's aggravated-assault instruction is clear and obvious because, while the indictment specifically alleged that Benton *stabbed* Ransom with a knife, the court instructed that the State was not required to show that any injury occurred, and instead, it only needed to prove Benton's actions placed the victim "in reasonable fear of receiving a violent injury."[19]

Without expressly addressing Benton's challenge to the foregoing instruction on the merits, the trial court found that any error in its aggravated-assault instruction was cured because it read the indictment to the jury, instructed the jury that the State had the burden of proving every material allegation in the indictment beyond a reasonable doubt, and provided the indictment to the jury during its deliberations. Nevertheless, Benton contends that—much like the instruction in *Talton*—the trial court's error could not be cured. Indeed, in *Talton*, we held that the erroneous jury instruction on aggravated assault could not be cured with a limiting instruction because while the indictment charged the defendant with *shooting* the victim with a pistol, the erroneous instructions "expressly authorized the jury to find [the

---

[19] *See State v. Thomas*, 350 Ga. App. 763, 767 (1) (830 SE2d 296) (2019) ("[B]ecause the indictment specifically charged [the defendant] with aggravated assault by shooting, the trial court's instruction that the jury may find [him] guilty based on placing the victim in reasonable fear of receiving a violent injury was erroneous, and the error was obvious.").

11

defendant] guilty if the evidence showed beyond a reasonable doubt that [he] simply pointed a pistol at the victim, thereby putting the victim in reasonable apprehension of receiving a serious bodily injury."[20] And the evidence adduced in that particular case "would permit the jury to make such a finding, even if they believed the shooting was accidental."[21] So, given those circumstances, the erroneous jury instruction in *Talton* was "harmful error requiring reversal."[22]

Although the erroneous jury instruction error in *Talton* is similar to the one in this case, *Talton* is distinguishable as to its holding that the error could not be cured by a limiting instruction. Indeed, in *Flournoy v. State,*[23] the Supreme Court of Georgia concluded that the trial court erred by instructing the jury that "aggravated assault with a deadly weapon is defined as an act committed with a deadly weapon, which act places another person in reasonable apprehension of immediately receiving a violent injury[,]" when the relevant charge in the indictment alleged that the

---

[20] *Talton*, 254 Ga. App. at 113.

[21] *Id.*

[22] *Id.*

[23] 294 Ga. 741 (755 SE2d 777) (2014).

12

defendant inflicted a violent injury on the victim by shooting him.[24] But distinguishing *Talton*, the Supreme Court found that the error was cured because "the court provide[d] the jury with the indictment and instruct[ed] jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."[25] Furthermore, in order to convict the defendant in *Flournoy*, "the jury of necessity had to find the defendant[ ] shot the victim, and therefore [his] assertion that the instruction improperly permitted the jury to convict for aggravated assault if it found defendants had simply pointed a pistol at [the victim], without actually shooting him, lack[ed] merit."[26]

As an initial matter, the *Talton* Court addressed whether a *limiting instruction* could remedy the erroneous jury charge at issue, not whether it could be cured in the manner at issue in *Flournoy* or in this case. Indeed, here, just as in *Flournoy*, the erroneous jury charge was cured when the trial court read the indictment to the jury, provided a copy of the indictment to the jury, and instructed the jury as to the

---

[24] *Id.* at 743 (2).

[25] *Id.* at 744 (2) (punctuation omitted).

[26] *Id.* at 744-45 (2).

13

reasonable-doubt standard. Given the foregoing, the jury, out of necessity, had to find that Benton stabbed Ransom, and thus, there is no concern that it was authorized to convict Benton of aggravated assault by merely pointing the knife at him and only placing him in reasonable apprehension of receiving a violent injury.[27] Under these circumstances, then, the trial court did not err in finding that the erroneous jury instruction had been cured.[28]

3. Benton also maintains that his counsel was ineffective for failing to object to one of his prior convictions being admitted for recidivist purposes; the trial court's erroneous instruction on aggravated assault; certain other-crimes evidence admitted

_____

[27] In *Talton*, when considering whether the erroneous jury instruction could be cured, we explained that the evidence could have authorized the jury to find the defendant only intended to point the gun at the victim, merely placing him in reasonable apprehension of violent injury, if the jury found that the shooting was an accident. *See Talton*, 254 Ga. App. at 113. But here, it is undisputed that Benton not only stabbed Ransom but did so intentionally. Indeed, the attack was recorded on a surveillance camera, Benton admitted to stabbing Ransom, and his only argument at trial was that he acted in self defense.

[28] *See Flournoy*, 294 Ga. at 743 (2) (explaining that even if the trial court's aggravated-assault instruction was erroneous because it charged the jury that the offense could be committed by a method not charged in the indictment, the error is cured if the court provides the jury with a copy of the indictment and instructs that the State was required to prove every material allegation in the indictment and every essential element of the crime charged beyond a reasonable doubt); *Williams v. Kelley*, 291 Ga. 285, 287 (728 SE2d 666) (2012) (same); *Thomas*, 350 Ga. App. at 767 (1) (same).

14

under OCGA § 24-4-404 (b); an improper closing argument; and the court's jury charge on impeachment by felony conviction. All of these claims are without merit.

To prevail on his Sixth Amendment claim of ineffective assistance, a claimant "must show both that counsel's performance was deficient and that the deficient performance prejudiced [him]."[29] And with respect to deficient performance, a claimant "must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."[30] Moreover, when reviewing counsel's performance, we apply a strong presumption that counsel's representation was "within the 'wide range' of reasonable professional assistance."[31] So, to show that he was prejudiced by the performance of his counsel, Benton "must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[29] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[30] *Jackson v. State*, 306 Ga. 266, 272 (5) (830 SE2d 99) (2019) (punctuation omitted); *accord Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).

[31] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Romer*, 293 Ga. at 344 (3).

15

different."[32] And a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[33] Finally, the trial court's factual findings and credibility determinations are "reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts."[34] With these guiding principles in mind, we turn now to Benton's specific claims of errors.

(a) Benton first claims that his counsel was ineffective for failing to object to his 1990 prior conviction being admitted for the purpose of sentencing him as a recidivist under OCGA § 17-10-7 (c). But given our holding in Division 1 *supra*, that conviction was properly admitted for sentencing purposes. And because any objection trial counsel could have made "would have been meritless and failure to make a meritless objection cannot be evidence of ineffective assistance, [this] claim of ineffectiveness fails."[35]

---

[32] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Arnold v. State*, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013).

[33] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Arnold*, 292 Ga. at 269 (2).

[34] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

[35] *Brown v. State*, 307 Ga. App. 797, 807 (5) (e) (706 SE2d 170) (2011) (punctuation omitted).

16

(b) Next, Benton argues that his counsel was ineffective for failing to object to the trial court's erroneous jury instruction on aggravated assault. But in Division 2 *supra*, we held that the trial court cured any error by providing a copy of the indictment to the jury and instructing it that the burden of proof rests with the State to prove every material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt. Thus, even if Benton's counsel was deficient for failing to object to the aggravated-assault jury instruction, Benton cannot show that he was prejudiced, and "[w]e need not address both parts of the *Strickland* test if [an appellant] makes an insufficient showing on one."[36]

(c) Benton also contends that his trial counsel was ineffective for failing to object to Rule 404 (b) evidence that he committed a prior aggravated assault in 2012.

As to the prior conviction at issue, the investigating officer testified that on September 1, 2012, she responded to a call reporting that someone had been stabbed. Once on the scene, the officer interviewed Benton and determined that he was the suspect in the stabbing. This stabbing incident was almost identical to the aggravated assault underlying this case, and the ensuing investigation revealed that Benton stabbed the victim after a verbal altercation regarding an allegedly stolen lawn mower

[36] *Thornton v. State*, 307 Ga. 121, 126 (3) (834 SE2d 814) (2019).

17

that eventually escalated into physical violence. Thereafter, Benton pleaded guilty to aggravated assault, and the State entered a certified copy of the 2012 conviction into evidence without objection. In addition to the other evidence, Benton admitted that he stabbed the victim in the 2012 case and was convicted of committing that crime. Moreover, during the pre-trial motions hearing on the admissibility of this evidence, Benton's counsel stated that he did not have an objection so long as he was be able to cross-examine the investigating officer. Benton's counsel further informed the court that his argument at trial would be that Benton stabbed the victim in self-defense. And following arguments from both parties, the trial court admitted evidence of the 2012 stabbing for purposes of establishing intent and motive.

Now, in considering Benton's claim of error, we turn to Rule 404 (b), which provides, *inter alia*, that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

But evidence that is offered for a proper purpose under Rule 404 (b) may still be excluded under OCGA § 24-4-403 if the evidence's "probative value is substantially

18

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[37] And to properly weigh the considerations of these two evidentiary rules and evaluate the admissibility of so-called "other acts" evidence,[38] the Supreme Court of Georgia has adopted a three-part test: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the

---

[37] OCGA § 24-4-403; *accord Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017) (punctuation omitted).

[38] *See Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. Rule 404 (b) is one such provision, and so, when we have considered the meaning of Rule 404 (b), we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b)." (citations omitted)); *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015) (noting that Georgia courts have adopted the three-part test used by the Eleventh Circuit Court of Appeals in evaluating other-acts evidence under the Federal Rules of Evidence, upon which Georgia's new Evidence Code is modeled); *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) (same).

act."[39] Importantly, we review a trial court's "decision to admit evidence of other crimes for a clear abuse of discretion."[40]

(I) *Motive*

(i) *Relevant to an Issue Other than Character*. As explained by our Supreme Court, motive has been defined as "the reason that nudges the will and prods the mind to indulge the criminal intent."[41] And in this case, evidence of the 2012 incident was "relevant to motive because it demonstrated [Benton's] willingness to use violence when he [believed someone had stolen from him and confronted the person about it]."[42] The first part of the three-part test, then, is satisfied.

(ii) *Rule 403*. The second part of the Rule 404 (b) analysis—which requires us to weigh the probative value of relevant evidence against its danger of unfair prejudice—is governed by Rule 403, which provides:

---

[39] *Bradshaw*, 296 Ga. at 656 (3); *accord Morris*, 340 Ga. App. at 306 (4).

[40] *Jernigan v. State*, 357 Ga. App. 415, 420-21 (2) (848 SE2d 707) (2020) (punctuation omitted).

[41] *See Bradshaw*, 296 Ga. at 657 (3) (punctuation omitted).

[42] *Id.*; *see United States v. Banks*, 514 F3d 959, 976 (D) (9th Cir. 2008) (holding that evidence of the defendant's prior stabbing of someone who insulted his gang status was admissible to prove motive under Rule 404(b) in his trial for attempted murder of someone else who also insulted his gang status).

20

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Additionally, the Supreme Court of Georgia has explained that the Rule 403 analysis must be done on a case-by-case basis and "requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense."[43] Our Supreme Court has also explained that "relevance is a binary issue; evidence is either relevant or it is not."[44] On the other hand, probative value is a range; "all relevant evidence has some probative value, but not necessarily much."[45] As a result, while the application of the Rule 403 test is "a matter committed principally to the discretion of the trial courts, . . . the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[46] Thus, we look at the evidence in "the

---

[43] *Castillo-Velasquez v. State*, 305 Ga. 644, 648 (2) (827 SE2d 257) (2019) (punctuation omitted); *accord Kirby v. State*, 304 Ga. 472, 481 (4) (a) (819 SE2d 468) (2018).

[44] *Booth v. State*, 301 Ga. 678, 684 (3) (804 SE2d 104) (2017).

[45] *Id.*

[46] *Olds*, 299 Ga. at 70 (2) (punctuation omitted); *accord Hood v. State*, 299 Ga. 95, 102 (4) (786 SE2d 648) (2016).

light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."[47]

Suffice it to say, the decision to exclude evidence under Rule 403 calls for "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[48] And here, the 2012 aggravated assault and the instant offense were essentially identical—Benton stabbed someone during a fight over missing lawn-care equipment. Additionally, because it was undisputed that Benton stabbed Ransom, the only issue at trial was whether Benton was forced to stab Ransom in self defense, and "the State's need for evidence that [Benton] committed a similar crime was significant, which weighs in favor of admission under Rule 403."[49] Moreover, Benton's prior, nearly identical aggravated assault occurred only three years before the instant stabbing, which is not so remote

---

[47] *McAllister v. State*, 351 Ga. App. 76, 81 (830 SE2d 443) (2019) (punctuation omitted).

[48] *Id.* (punctuation omitted).

[49] *Jernigan*, 357 Ga. App. at 424 (2) (a) (ii).

in time as to weigh in favor of excluding the evidence.[50] Lastly, and importantly, the trial court reduced any risk of undue prejudice by instructing the jury—both at the time when the Rule 404 (b) evidence was admitted and in its final jury charge—that it could consider Benton's prior conviction only for the limited purposes of determining intent and motive.[51] Thus, viewing the foregoing in the light most favorable to admissibility, the trial court did not err in finding that the second prong of the Rule 404 (b) analysis was satisfied.

---

[50] *See Harris v. State*, 358 Ga. App. 204, 206 (2), 208 (4) (854 SE2d 374) (2021) (holding that, although the prior crimes occurred "years ago" in the 1980s and 1990s, the trial court was not required to exclude the similar-transaction evidence); *Sturgis v. State*, 356 Ga. App. 219, 220 (842 SE2d 82) (2020) (holding that, although the prior child molestation offenses at issue occurred between 22 and 10 years prior to trial, the offenses were similar enough to the instant offense such that they could aid the jury in determining whether the defendant committed); *Sloan v. State*, 351 Ga. App. 199, 210 (e) (i) (830 SE2d 571) (2019) (holding that an offense committed five years prior to the offense at issue was not so remote to be lacking in evidentiary value).

[51] *See Moton v. State*, 351 Ga. App. 789, 793-94 (833 SE2d 171) (2019) (noting that the risk of unfair prejudiced was reduced by the trial court's limiting instruction); *Sloan*, 351 Ga. App. at 210 (2) (e) (I) (acknowledging that a limiting instruction can lessen the prejudicial effect of other-acts evidence); *Burgess v. State*, 349 Ga. App. 635, 643 (3) (824 SE2d 99) (2019), *disapproved of on other grounds by Hill v. State*, ___ Ga. App. ___, No. A21A0351, 2021 WL 2621654 (2021) ("[A]ny prejudice resulting from admission of evidence of [the defendant's] prior conviction was mitigated by the limiting instruction the trial court gave when the evidence was introduced and in its final charge to the jury.").

(iii) *Sufficiency of the Evidence.* Benton does not dispute that there was sufficient evidence to prove by a preponderance of the evidence that he committed the 2012 aggravated assault, and thus, we need not address this final prong of the Rule 404 (b) test.

In sum, weighing all the foregoing factors in favor of maximizing the 2012 conviction's probative value and minimizing its undue prejudicial impact, the trial court did not err in admitting the Rule 404 (b) evidence.[52]

(II) *Intent.* Because we held in Division 3 (c) (1) that Benton's prior conviction was admissible to prove his motive in committing the crime, we need not address whether this evidence was also admissible to prove his intent.[53]

Benton's 2012 aggravated-assault conviction was properly admitted, then, under Rule 404 (b) for the purposes of establishing motive, and his trial counsel was not ineffective for failing to object to the evidence and opting to cross-examine the

---

[52] *McAllister v. State*, 351 Ga. App. 76, 81 (830 SE2d 443) (2019) (punctuation omitted).

[53] *See Brannon v. State*, 298 Ga. 601, 607 (4) n.3 (783 SE2d 642) (2016) ("Having determined that the evidence was admissible as to intent, knowledge and identity, we need not examine whether it was also admissible to show participation in a plan."); *Jernigan*, 357 Ga. App. at 424 (2) (b) (explaining that because we held in a prior division that a prior conviction was admissible to show intent, we need not address whether the evidence was also admissible to prove identity).

testifying officer instead. Indeed, trial counsel cannot be ineffective for failing to raise a meritless objection.[54]

(d) Benton next argues that his trial counsel was ineffective for failing to object to an improper future-dangerousness argument during the State's closing argument.

Benton specifically contends that the following statements by the prosecutor improperly discussed future dangerousness:

> Thank you. Ladies & Gentlemen, he has not paid enough and we are not going to let him go back to his neighborhood because this is not a man who has to be prepared for violence. You know who has to be prepared for violence—the people he accuses of stealing his lawn care equipment. Those are the people who have to be prepared for violence. He stabs people without provocation.

> . . .

> And then, we find out that this is just what he does. He pled guilty to stabbing somebody who he accused of stealing his lawn equipment and he claims that was self defense, too. Again. He just keeps running into situations where people he knows, people he works with, people that are his friends, somehow they steal from him and then somehow he has to stab them in order to protect himself. The only person here that's carrying a knife—the only person here that is stabbing people, who is

---

[54] *See supra* note 35 & accompanying text.

attacking people is the defendant. Nobody else is carrying a knife. Nobody else is hurting him.

And so, no, we do not need to let him go back to his community. And this is not the worst day of his life. He's already been convicted of this exact same crime before.

During the motion for new trial hearing, Benton's trial counsel testified that he did not object to the foregoing statements because he did not believe they constituted an improper future-dangerousness argument. But our Supreme Court has explained that "we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct."[55] Put another way, when considering an ineffective-assistance-of-counsel claim, the proper assessment is "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."[56] Indeed, if a reasonable lawyer "might have done what the actual lawyer did—whether for the same reasons given by the actual lawyer or different reasons entirely—the actual

---

[55] *Shaw v. State*, 292 Ga. 871, 875 (3) (a) n.7 (742 SE2d 707) (2013).

[56] *Whitelock v. State*, 349 Ga. App. 28, 41 (3) (825 SE2d 426) (2019).

26

lawyer cannot be said to have performed in an objectively unreasonable way."[57] And unless the choice of strategy is "objectively unreasonable, such that no competent trial counsel would have pursued such a course, we will not second-guess counsel's decisions in this regard."[58] Here, trial counsel's decision not to object to the complained-of statements was not objectively unreasonable. Indeed, under circumstances similar to this case, the Supreme Court of Georgia held that to remain silent instead of objecting and calling attention to the improper argument constituted reasonable trial strategy.[59] Benton's counsel was not deficient, then, in failing to object to the complained-of statements because such a decision is objectively a reasonable trial strategy. And because counsel was not deficient in failing to make the

---

[57] *Shaw*, 292 Ga. at 875 (3) (a).

[58] *Hendrix v. State*, 298 Ga. 60, 62 (1) (a) (779 SE2d 322) (2015).

[59] *See Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (concluding that defense counsel's decision "to remain silent instead of objecting and calling attention to the improper argument" constituted reasonable trial strategy); *Whitelock*, 349 Ga. App. at 41 (holding that it is a reasonable trial strategy for defense counsel not to object to potentially improper statements during closing argument because, *inter alia*, an objection would highlight the prejudicial and improper statements); *Pitts v. State*, 323 Ga. App. 770, 775 (3) (747 SE2d 699) (2013) (holding that it was reasonable trial strategy to not object to improper statements during the State's closing argument to avoid drawing the jury's attention to them).

objection at issue, we need not address whether Benton was prejudiced by counsel's failure to do so.[60]

(e) Finally, Benton argues that his counsel was ineffective for failing to object to the trial court's jury charge on impeachment by felony conviction.

Specifically, Benton contends that his counsel was ineffective for failing to object to the impeachment by felony conviction jury instruction because his 2012 conviction was admitted solely under Rule 404 (b) and not for the purpose of challenging his credibility, which is governed by OCGA § 24-6-609.[61] During trial, the court instructed the jury as follows:

> The question of whether a witness has been impeached is whether you, the jury, believe the witness has been proved unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified.
>
> In determining the credibility of witnesses, any testimony by them and any testimony by them in the court, in addition to the factors upon which

[60] *See supra* note 36 & accompanying text.

[61] *See* OCGA § 24-6-609 (a) (2) ("For the purpose of attacking the character for truthfulness of a witness . . . [e]vidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of such crime required proof or admission of an act of dishonesty or making a false statement.").

I have instructed you, you may consider, where applicable, the following to determine the credibility or believability of any such witness. This would include evidence of . . . proof that the witness or defendant has been convicted of a felony offense. A felony offense is one punishable by one year or more of imprisonment.

Then, at the motion-for-new-trial hearing, Benton's trial counsel testified that he did not see anything objectionable about the instruction.

But setting aside whether counsel was deficient for failing to object to the impeachment-by-felony conviction instruction, Benton cannot show that he was prejudiced as a result of this alleged failure. As previously mentioned, in reviewing a challenge to the trial court's jury instruction, "[this Court] views the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case."[62] And at the outset of trial, the court instructed:

[T]he *jury* must determine the credibility and believability of witnesses. It is for you to determine which witness or witnesses you will believe and which witness or witnesses you will not believe if, in fact, there are some whom you do not believe.

---

[62] *Bryant*, 354 Ga. App. at 605.

As the fact finder it is *your duty* to believe the witnesses whom you think are most believable. It is for *you alone* to determine what testimony you will believe and what testimony you will not believe."[63]

Further, the trial court's brief instruction on impeachment by felony conviction at the close of trial was couched within a much lengthier instruction, informing the jury that credibility was an issue solely for the *jury* to decide and listing *numerous* other factors it should take into consideration in determining if evidence is credible. Indeed, immediately following the jury charge at issue, the trial court instructed:

Now the jury must determine the credibility of witnesses. In determining this you may consider all of the facts and circumstances of the case, the witness' manner of testifying, the witness' means and opportunity of knowing the facts about which they testify, the nature of the facts about which the witness testifies, the probability or improbability of their testimony, the witness' interest or lack of interest in the outcome of the case, the witness' personal credibility insofar as it may have been shown in your presence and by the evidence, any evidence of bias towards a party, any possible motive in testifying if shown by the evidence. In that regard you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters, and whether the witness has been impeached.

---

[63] (Emphasis supplied).

30

So, the jury was instructed that the issue of credibility was *solely* for it to decide. Additionally, the jury was *not* instructed that a prior felony alone is sufficient to render Benton untruthful and is only one of numerous things it could consider, but was not required to consider. As a result, we find it highly unlikely the jury would have found Benton's self-defense claim credible absent the complained-of instruction.[64]

Moreover, it is also highly unlikely this brief jury instruction, given in passing as only one of many the jury could consider, contributed to the verdict because the evidence of Benton's guilt was overwhelming—he admitted to stabbing the victim and the jury saw him do it via surveillance footage. Thus, the sole issue before the jury was whether Benton acted in self defense, and the best evidence to help the jury make that determination was being able to view the entire altercation for themselves.

---

[64] *See Jones v. State*, 302 Ga. 892, 897-98 (3) (810 SE2d 140) (2018) (holding that, viewing the erroneous jury instruction in context and as a whole, it was "highly improbable that the consistency instruction contributed to the verdict, and we will not reverse on this ground"); *Shields v. State*, 285 Ga. 372, 376 (3) (677 SE2d 100) (2009) ("[T]he [jury] instruction must be considered in the context of the totality of the court's charge. In the context of the court's charge as a whole, the instruction in no way misled the jury or hindered [the defendant's] ability to attempt a defense of voluntary manslaughter." (footnote and citation omitted)); *Green v. State*, 240 Ga. App. 650, 652 (2) (523 SE2d 632) (1999) ("In the context of the entire charge, the unwarranted charge was no more than a passing reference, and it is highly probable that it did not contribute to the verdict.").

Simply put, given the overwhelming nature of the evidence and considering the impeachment by felony conviction jury charge in context, Benton cannot show he was prejudiced by his counsel's failure to object.[65]

For all these reasons, we affirm Benton's conviction.

*Judgment affirmed. Rickman. C. J., and Mercier, J., concur.*

---

[65] *See McClain v. State*, 267 Ga. 378, 383 (3) (a) (477 SE2d 814) (1996) (holding that, due to the overwhelming nature of the evidence, the prosecutors improper future-dangerous argument was highly unlikely to have contributed to the verdict); *Paschal v. State*, 335 Ga. App. 411, 414 (780 SE2d 681) (2015) ("In light of this overwhelming evidence, it is highly probable that the evidence of [the defendant's] 1989 convictions did not contribute to the jury's verdict."); *Nunery v. State*, 229 Ga. App. 246, 247 (2) (493 SE2d 610) (1997) ("Considering the charge as a whole and given the overwhelming evidence of [the defendant's] guilt, we conclude the erroneous charge was harmless because it is highly probable that it did not contribute to the judgment.").